UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                             :

JAMES MILLER,                     :
                  Petitioner,    :
                                      :     **MEMORANDUM**
        - against -          :     **DECISION & ORDER**
                                      :
WARDEN OF SING SING CORRECTIONAL  :     13-cv-4576 (BMC)
FACILITY,                             :
                                      :
                  Respondent.   :
------------------------------------------------------------ X

**COGAN**, District Judge.

       Petitioner *pro se* seeks habeas corpus relief under 28 U.S.C. § 2254 from his conviction

for second-degree burglary and fourth-degree grand larceny. The facts will be set forth as

necessary to address each of petitioner's points of error, but to summarize, this was an apartment

burglary in which petitioner's fingerprints were found in an armoire in the victims' apartment

from which some of the victims' property was stolen. Petitioner did not know the victims and

they did not know him. The fingerprints were the only evidence linking him to the crime.

       As shown below, petitioner's arguments challenging his conviction are all procedurally

barred. Accordingly, the petition is denied.

**I.**      **Right to Choose Counsel**

       In a motion dated about six months before trial, petitioner moved *pro se* for the

appointment of new counsel. The motion generally stated that petitioner's appointed counsel had

failed to return his calls or provide him with documents and had not responded to advice that

petitioner had given him establishing that petitioner was innocent.[1] For unknown reasons, the

---

[1] There is apparently a template for a motion for the appointment of new counsel in state court, and petitioner circled
all of the provided examples of potentially ineffective conduct. But his narrative was very general and limited. To
the extent that petitioner is re-asserting the grounds that he previously alleged in seeking new counsel as a basis for

motion was not received by the court until about four months prior to trial.[2]  However, at no time after the date of the motion did petitioner call the motion to the court's attention.  To the contrary, petitioner continued with his original counsel through a suppression hearing (in which petitioner prevailed – his post-arrest statements to the police were suppressed), the trial, and sentencing, never alerting the trial court that he had requested new counsel.

On direct appeal, petitioner contended that the trial court's failure to rule on the motion had deprived him of his Sixth Amendment right to counsel.  The Appellate Division disagreed, holding that "[a] properly interposed constitutional claim may be deemed abandoned or waived if not pursued.  Here, the defendant's conduct subsequent to the making of his *pro se* motion evinces his satisfaction with counsel and an abandonment of his unresolved constitutional application."  People v. Miller, 102 A.D.3d 813, 814, 957 N.Y.S.2d 890 (2d Dep't) (citations and internal quotation marks omitted), leave to app. denied, 21 N.Y.3d 1017, 971 N.Y.S.2d 500 (2013).

New York's doctrine of abandonment constitutes a procedural bar to addressing petitioner's constitutional claim on federal habeas corpus review.  See Scott v. Graham, No. 16-cv-2372, 2017 WL 2820061, at *14-15 (S.D.N.Y. June 29, 2017); Davila v. Duncan, No. 00-cv-1029416, 2001 WL 1029416, at *5 (S.D.N.Y. Sept. 6, 2001).  A federal court should not address the merits of a petitioner's habeas claim if a state court has rejected the claim on "a state law ground that is independent of the federal question and adequate to support the judgment."  Lee v. Kemna, 534 U.S. 362, 375 (2002) (emphasis omitted) (quoting Coleman v. Thompson, 501 U.S.

habeas corpus relief, those grounds are rejected for the same reason his right to counsel claim is rejected in this opinion.

[2] It may be that petitioner held on to the motion for about two months before he mailed it in, or it may have been a docketing clerk's error.

722, 729 (1991)).  When a state court rejects a petitioner's claim because he failed to comply with a state procedural rule, that procedural rule may constitute an adequate and independent state law ground for the state court's decision.  See Coleman, 501 U.S. at 729-30; see, e.g., Murden v. Artuz, 497 F.3d 178, 193 (2d Cir. 2007).  State law procedural grounds are only adequate to support the judgment – and therefore foreclose federal review – if they are "firmly established and regularly followed" in the state.  Murden, 497 F.3d at 192 (quoting Monroe v. Kuhlman, 433 F.3d 236, 241 (2d Cir. 2006)).

It is well established under New York law that to preserve a claim, a defendant must not only move for the relief he seeks but must call the motion to the trial court's attention before taking substantial action that indicates that he is no longer interested in the motion.  See, e.g., People v. Rodriguez, 50 N.Y.2d 553, 557-58, 429 N.Y.S.2d 631, 632-33 (1980) (where defendant moved to dismiss on Speedy Trial grounds and the trial court conducted a hearing on the motion but did not decide it prior to trial, defendant was deemed to have abandoned the motion).  Numerous cases in the Appellate Divisions have specifically held that if a criminal defendant files a motion and then takes no action to pursue it, but instead goes forward with his trial, the motion is deemed abandoned.  See People v. Diallo, 88 A.D.3d 511, 511-12, 930 N.Y.S.2d 194, 196 (1st Dep't 2011) (*pro se* motions asserting constitutional Speedy Trial claims); People v. Ramos, 35 A.D.3d 247, 247, 825 N.Y.S.2d 222, 223 (1st Dep't 2006) (motion to proceed *pro se*); People v. Berry, 15 A.D.3d 233, 234, 788 N.Y.S.2d 849, 850 (1st Dep't 2005) (*pro se* suppression motion deemed abandoned); People v. Smith, 13 A.D.3d 1121, 1122, 786 N.Y.S.2d 879, 880 (4th Dep't 2004) (motion to suppress deemed abandoned); People v. Boccaccio, 288 A.D.2d 898, 898, 732 N.Y.S.2d 385, 386 (4th Dep't 2001) (same); People v . Brown, 284 A.D.2d 191, 191, 726 N.Y.S.2d 263, 263 (1st Dep't 2001) (same); People v.

Brimage, 214 A.D.2d 454, 454-55, 631 N.Y.S.2d 2, 3 (1st Dep't 1995) (same).  The Appellate

Division's holding in this case therefore constitutes an independent and adequate state court

ground that is firmly established and regularly followed.

Even if a claim is barred under state procedural rules, however, a federal court may still

review the claim on the merits if the petitioner can demonstrate both cause for the default and

prejudice from it, or if he can demonstrate that the failure to consider the claim will result in a

miscarriage of justice.  See Coleman, 501 U.S. at 749-50; Harris, 489 U.S. at 262.  The latter

avenue, a miscarriage of justice, is demonstrated in extraordinary cases, such as where a

constitutional violation results in the conviction of someone who is actually innocent.  See

Murray v. Carrier, 477 U.S. 478, 496 (1986).

The first avenue, cause for the default and prejudice from it, can be demonstrated with "a

showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or

that 'some interference by state officials' made compliance impracticable, . . . [or that] the

procedural default is the result of ineffective assistance of counsel."  Bossett v. Walker, 41 F.3d

825, 829 (2d Cir. 1994) (quoting Murray, 477 U.S. at 488) (alteration in original).  Although, in

some circumstances, ineffective assistance of counsel may constitute "cause" sufficient to avoid

a procedural default, Murray, 477 U.S. at 488-89, the ineffective assistance claim must itself

have been exhausted in state court.  Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000).  To

adequately exhaust a claim, a petitioner must "fairly present" the claim to the state court.

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

New York's rule of abandonment, particularly of a *pro se* motion for new counsel, is

unlikely to qualify for any of the established reasons to avoid the procedural bar on federal

habeas corpus review.  The obvious concern of the rule is that a defendant, having interposed a

request for relief, should not be permitted to keep it in his back pocket, to be reasserted on appeal only if he is unhappy with the result of his trial. Moreover, to the extent a defendant is unhappy with his assigned counsel and does not pursue a *pro se* application to change counsel, he may still contend that his counsel was ineffective in various ways if he had grounds to do so (as petitioner has asserted here and as discussed below). Petitioner never offered any cause to the Appellate Division for not having pursued his *pro se* motion – indeed, his appointed appellate counsel did not even address the state's abandonment argument. I therefore see neither cause, prejudice, or miscarriage of justice in upholding the Appellate Division's ruling that the motion had been abandoned.

## II.    Confrontation Clause/Ineffective Assistance Claim

### A.  Trial Record

At trial, the sole evidence connecting petitioner to the crime consisted of two witnesses who testified about fingerprint evidence. First, a police officer from the Evidence Collection Team with substantial training in fingerprint collection testified that he obtained two prints from inside an armoire in the victims' apartment and placed them on a print card. Second, a police department fingerprint expert, Rosemarie Simonetti, testified that she compared the print card with possible matches from a computer database (likely a database of prior arrestees, but she didn't say that) and concluded that petitioner's, which was in the database, matched.

She further testified that after she had reached her conclusion, as per her unit's practice, she gave both sets of prints to two other experts in her office, one for a blind confirmation and the other for a technical review, and each reviewer signed a confirmation slip. The blind confirmation consisted of reviewing the latent prints and ink prints Simonetti had selected to confirm that they matched, without knowing which fingers the prints were taken from. The

technical reviewer did the same thing, except he knew which fingers were used, and confirmed

that they matched. Defense counsel did not object to any of the fingerprint expert's testimony

concerning these reviewers.

## B. Direct Appeal

On direct appeal, petitioner contended that his rights under the Confrontation Clause had

been violated by the fingerprint expert's testimony that two reviewers had confirmed her results

after she had reached her opinion. He acknowledged that the point of error was not preserved at

trial, but stated as follows:

> [A]lthough defense counsel failed to object to the admission of this evidence,
> appellant asks the Court to reach this issue in the interest of justice.

> In the alternative, the Court should reverse and grant a new trial because defense
> counsel was ineffective for failing to object to this clearly inadmissible and
> tremendously prejudicial testimony. See Strickland v. Washington, 466 U.S. 668
> (1984).

(I will refer to the argument in the second paragraph as the "ineffective assistance excuse."). In

his responsive brief, the District Attorney urged the Appellate Division not to exercise its interest

of justice jurisdiction, but he did not mention the ineffective-assistance excuse.

In rejecting petitioner's point, the Appellate Division likewise did not refer to the

ineffective assistance excuse. It simply held that "[t]he defendant's challenge to portions of the

testimony of the fingerprint expert is unpreserved for appellate review, as the defendant failed to

object to the testimony. We decline to review that claim in the exercise of our interest of justice

jurisdiction." Miller, 102 A.D.3d at 814, 957 N.Y.S.2d at 890 (citations omitted).

## C. Section 440 Proceeding

The New York Court of Appeals' denial of leave to appeal did not end this issue's

journey through the state courts. Petitioner, proceeding *pro se*, filed a collateral attack on his

conviction under New York Criminal Procedure Law § 440.10, raising the exact same Confrontation Clause claim – indeed, it was copied virtually verbatim from his brief on direct appeal. Thus, it again raised both the interest of justice argument and the ineffective assistance excuse as reasons why the court should hear plaintiff's Confrontation Clause argument. In addition to his Confrontation Clause/ineffective assistance claim, petitioner contended that his counsel had been ineffective for failing to investigate the fingerprint evidence (the "investigation claim").

In his response, the District Attorney again did not mention the ineffective assistance excuse. Instead, he relied on New York Criminal Procedure Law § 440.10(2)(a), which provides that a § 440 motion cannot be used to raise an issue that "was previously determined *on the merits* upon an appeal from the judgment . . . ." (Emphasis added). The District Attorney argued alternatively that petitioner's Confrontation Clause claim was without merit.

The § 440 court accepted the District Attorney's argument that the Confrontation Clause claim had already been raised and rejected "on the merits" on direct appeal, and thus the court could not hear it again by reason of § 440.10(2)(a). The Court also rejected on the merits based on the record petitioner's investigation claim and his contention that trial counsel had been ineffective for failing to sufficiently investigate and challenge the merits of the fingerprint expert's testimony.

The Appellate Division granted leave to appeal the § 440 court's decision and appointed counsel. Counsel appointed for petitioner argued that the disposition of the direct appeal should not control the outcome of the § 440 proceeding because in holding the Confrontation Clause claim unpreserved on direct appeal, the Appellate Division "[had] not decide[d] the merits of that claim or appellant's related ineffective assistance claim." Thus, counsel asserted, the Appellate

Division's decision on direct appeal did not "determine" either claim "on the merits," the result being that § 440.10(2)(a) did not prohibit review.

The District Attorney offered the Appellate Division five options on which to affirm the § 440 court's decision. First, he argued that when the Appellate Division declines to exercise its interest of justice jurisdiction on direct appeal, that constituted a "determination on the merits" for purposes of § 440.10(2)(a), thus precluding a collateral attack under § 440.10. As a first and somewhat paradoxical alternative to that theory, the District Attorney argued that if the Appellate Division disagreed with its first argument – finding that the claim had not been determined on the merits – then the Appellate Division should reject the § 440 motion because then petitioner had forfeited the claim since it could have been raised, citing § 440.10(3)(a).[3] As a second alternative, the District Attorney urged the Appellate Division to reject the Confrontation Clause claim on the merits. As a third alternative, the District Attorney argued that any error was harmless. Finally, the District Attorney argued that although trial counsel failed to preserve the claim, that did not mean that he was ineffective (although the argument was set forth solely as a matter of state law).

The Appellate Division held that the Confrontation Clause claim was barred from § 440 review by its prior decision on direct appeal that the claim was unpreserved. The only reference in its brief decision to ineffective assistance of counsel was its statement that, "[c]ontrary to the defendant's contention, the Supreme Court could determine from the parties' submissions that the defendant was not deprived of the effective assistance of counsel." People v. Miller, 157 A.D.3d 825, 826, 66 N.Y.S.3d 638, 638-39 (2nd Dep't), leave to app. denied, 2018 WL 3392024 (N.Y. Ct. App. June 14, 2018) (table).

---

[3] This argument makes no sense and appears to have been raised to emphasize that the Appellate Division had already addressed the claim on direct appeal.

### D. Analysis

#### 1. *Standard of Review*

For the reasons set forth in the preceding point, the Appellate Division's decision on direct appeal that the Confrontation Clause claim was "unpreserved" creates a procedural bar to review of that constitutional claim in this Court. The more complex question is selecting which standard of review applies to petitioner's separate contention that counsel was ineffective for failing to preserve the point, offered to excuse the lack of preservation, which, if successful, would overcome the procedural bar. Petitioner has exhausted his ineffective assistance claim to the extent required by Second Circuit caselaw. See Abdurrahman v. Henderson, 897 F.2d 71, 73 (2d Cir. 1990). There is an issue, however, as to whether the state courts resolved the issue, or overlooked it.

The former would attract the narrow standard of review for state court claims under the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254. That is, in determining whether to grant habeas corpus relief, this Court could only consider Supreme Court authority and could issue relief only if the state courts' holdings were "contrary to, or an unreasonable interpretation of" that authority. However, the AEDPA standard of review does not apply if the state courts overlooked the issue even though petitioner duly presented it, or otherwise failed to decide it. In that case, petitioner's claim would be subject to *de novo* review in this Court. See Aparicio v. Artuz, 269 F.3d 78, 93 (2d Cir. 2001). The choice between these standards of review is important in this case because the Second Circuit has recently held that the Confrontation Clause authorities from the U.S. Supreme Court are not sufficiently settled to permit a finding, at least in many scenarios, that the state courts improperly applied them under

AEDPA's deferential standard of review.  See Washington v. Griffin, 876 F.3d 395, 407-10 (2d Cir. 2017).

In Harrington v. Richter, 562 U.S. 89, 99 (2011), the Supreme Court directed federal courts to presume that a state court has decided the merits of a constitutional claim unless there is an "indication [in the state-court decision] or state-law procedural principles to the contrary." Harrington was a case where the state court summarily affirmed a conviction with no explanation.  But in Johnson v. Williams, 568 U.S. 289, 292-93, 298 (2013), the Court extended the Harrington presumption to state court decisions addressing some, but not all, points – in these cases, federal courts should presume that the state court has also disposed of the unaddressed points on the merits.

In the present case, the Appellate Division on direct appeal obviously disposed of the Confrontation Clause claim on procedural rather than substantive grounds.  However, as to the ineffective assistance claim to excuse his procedural default, it is not so clear.  The ineffective assistance excuse is not expressly addressed anywhere in the opinion, nor is there a residual holding that generally rejects all unaddressed claims.

Johnson offered several non-exclusive considerations to help federal courts determine whether a petitioner has overcome the presumption that a state court ruled on the merits of a claim.  To the extent applicable here, those factors and others compel this Court to conclude that the Appellate Division missed or determined not to review petitioner's argument of an ineffective assistance excuse, and did not resolve it on the merits without explanation.

A factor not identified in Johnson relates to the near-universal practice of the Appellate Division, Second Department of disposing of some claims expressly and others implicitly. Under this practice, the Second Department, after discussing the merits of some claims, will

almost always reference the others by stating "defendant's remaining claims are unpreserved or without merit." The Second Circuit has held that this general disposition should be viewed as having decided the "remaining" claims on the merits. See Jimenez v. Walker, 458 F.3d 130, 145-46 (2d Cir. 2006). There was no such general disposition of the ineffective assistance claim in the instant case; there was no reference to it at all. This suggests that the Appellate Division simply missed that claim.

Second, the "argument" on the ineffective assistance excuse in petitioner's direct appeal brief, although legally sufficient to exhaust it under Second Circuit authority, was easy to overlook. As is typical, it consisted of one conclusory sentence, the very last one, at the end of the brief point on the Confrontation Clause claim.[4] No argument was offered in support the ineffective assistance claim.

Third, the District Attorney's brief on direct appeal also did not reference the ineffective assistance excuse, even though it did address the alternative interest of justice excuse. This is most unusual, both in my experience and in this case, where the District Attorney offered five alternatives for denying the Confrontation Clause claim on appeal of the § 440 motion (one of which, finally, addressed the ineffective assistance excuse on the merits). It may well be that the District Attorney overlooked petitioner's brief reference to the ineffective assistance excuse, and the omission was carried over to the Appellate Division's decision. In this regard, I note that

---

[4] It may be anomalous that, although this single sentence is sufficient to exhaust the claim, see Abdurrahman, 897 F.2d at 73, the Second Circuit and other Courts of Appeals would be unlikely to consider the claim if briefed in such a perfunctory manner on direct appeal. See United States v. Cloud, 680 F.3d 396, 409, n. 7 (4th Cir. 2012); United States v. Mitchell, 502 F.3d 931, 953, n. 2 (9th Cir. 2007); United States v. Charles, 469 F.3d 402, 408 (5th Cir. 2006); Tolbert v. Queens Coll., 242 F.3d 58, 75 (2d Cir. 2001); Reynolds v. Wagner, 128 F.3d 166, 178 (3d Cir. 1997). It seems inconsistent with the comity concern in federal habeas corpus law to presume that state courts will review an issue that federal courts would deem insufficiently presented for review.

there was no reply brief from petitioner, and thus no opportunity to point out the District Attorney's failure to address the ineffective assistance excuse.

Finally, this conclusion is further suggested by the format of the Appellate Division's decision. It tracked the District Attorney's brief, which recommended rejecting the Confrontation Clause claim on the merits and declining to exercise interest of justice jurisdiction, and which made no mention of the ineffective assistance excuse. It seems a fair conclusion that the panel deciding the case, having read petitioner's brief and the District Attorney's opposition, decided the case based on the last submission that came under its review.

In reaching this conclusion, I accept, although I might have my doubts about, the Appellate Division's implied holding on the § 440 appeal that its decision to reject the Confrontation Clause/ineffective assistance claim on direct appeal was "on the merits" for purposes of C.P.L. § 440.10(2)(a). It is a state court construing state law and its determination on that point is not within the province of federal habeas corpus review. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010). However, it does not follow that I should view its determination as anything other than a procedural rejection under 28 U.S.C. § 2254(d). The determination of whether to consider a claim procedurally barred when a state court holds that it is "unpreserved" is exclusively a question of federal law. See Lee, 534 U.S. at 375.

I therefore conclude that petitioner has overcome the presumption that the Appellate Division on direct appeal decided the ineffective assistance excuse on the merits; I conclude that the Appellate Division overlooked the claim.

This would normally mandate *de novo* review for the ineffective assistance excuse. However, there is still the issue of whether the decision of the § 440 court or the Appellate Division's affirmance of that court's decision decided the ineffective assistance excuse on the

merits.  If either court decided the issue, then it would be entitled to deferential rather than *de novo* review in this Court, as it would then be the last state court decision on the merits that comes under habeas corpus review.  See <u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018).

As described above, neither the § 440 court nor the Appellate Division on appeal from the § 440 court's decision reached the merits of petitioner's ineffective assistance excuse. Plaintiff's § 440 motion clearly distinguished between: (1) the alleged inadequacy of the fingerprint evidence for the conviction; (2) counsel's failure to investigate the alleged inadequacy of the fingerprint evidence and his counsel's failure to object to that inadequacy; and (3) the alleged violation of his Confrontation Clause rights and his counsel's failure to preserve that claim.  Petitioner's ineffective assistance excuse was included within his Confrontation Clause claim before the § 440 court, as it had been on direct appeal.

The § 440 court's opinion addressed ineffective assistance, but clearly did so only in the context of (1) and (2) above.  When addressing the Confrontation Clause claim, the § 440 court accepted the District Attorney's argument that the Appellate Division's invocation of a procedural bar on direct appeal constituted a determination "on the merits" for purposes of C.P.L. § 440.10(2)(a), and thus the issue could not be reviewed again on a § 440 motion.  The § 440 court never mentioned the ineffective assistance excuse nor did it find that the Appellate Division on direct appeal had done so.

The Appellate Division's decision on appeal from the § 440 court shows that the ineffective assistance excuse was again overlooked.  That Court rejected the Confrontation Clause claim based on its prior decision but did not mention the ineffective assistance excuse for petitioner's failure to preserve which, as shown above, had never been addressed.  That Court's

reference to ineffective assistance in its decision dismissing the § 440 motion can only be understood as responding to the investigation claim, not the Confrontation Clause claim.

I therefore conclude that petitioner is entitled to *de novo* review of his Confrontation Clause claim.[5]

### 2. Merits

To prove that his counsel was constitutionally ineffective in failing to object to the expert's testimony, petitioner must meet the familiar two-prong test of <u>Strickland</u>, 466 U.S. at 668. First, he must prove that counsel's representation "fell below an objective standard of reasonableness" according to "prevailing professional norms." <u>Id.</u> at 688. Second, petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694; <u>see</u> <u>also</u> <u>Hill v. Lockhart</u>, 474 U.S. 52, 58-59 (1985). In other words, petitioner "must show that the deficient performance prejudiced the defense." <u>Strickland</u>, 466 U.S. at 687. For a showing of prejudice, "[t]he likelihood of a different result must be substantial, not just conceivable." <u>Harrington</u>, 562 U.S. at 112.

As to objective reasonableness, the Court must first consider what would or should have happened if trial counsel had objected. If there is a reasonable likelihood that the objection would have been sustained, or if overruling it would have been reasonably likely to lead to a reversal on appeal – in other words, that the objection was well-based in law – then petitioner has made a *prima facie* case that his trial counsel was objective unreasonable.

---

[5] <u>Murden</u>, 497 F.3d at 178, is not to the contrary. There, in a § 440 motion, the petitioner claimed that his counsel was ineffective for a number of reasons. The § 440 court held that that some of these reasons could have been raised on direct appeal and were therefore procedurally barred. It held alternatively that the claims "lack merit," but then discussed all but one of the alleged inadequacies of counsel. The Second Circuit held that the unaddressed instance of ineffective assistance should be deemed to have been decided on the merits. This was based on the "catch-all" language of the § 440 that "defendant's claims lack merit," and on the fact that the other components of the ineffective assistance claim had been addressed. Neither of those factors is present in the instant case.

The transformative holding of <u>Crawford v. Washington</u>, 541 U.S. 36 (2004), has been discussed in too many cases to require repetition here.  <u>See, e.g.</u>, <u>Griffin</u>, 876 F.3d at 395. Principles that can be gleaned from the triumvirate of <u>Crawford</u>'s Supreme Court progeny that deal with expert witnesses' reference to or reliance on the work product of others, <u>Williams v. Illinois</u>, 132 S. Ct. 2221 (2012) (plurality opinion); <u>Bullcoming v. New Mexico</u>, 564 U.S. 647 (2011); and <u>Melendez-Diaz v. Massachusetts</u>, 557 U.S. 305 (2009), are as follows:  (1) if the non-testifying participant's work was prepared without awareness that it would be used in a criminal prosecution (*i.e.*, non-testimonial evidence), then reference to that work by an expert who formed her own conclusion raises no Confrontation Clause issue (<u>Williams</u>); (2) if the non-testifying participant's work is testimonial and incriminating on its face (*e.g.*, analyst certifications showing that a certain substance is cocaine, as in <u>Melendez-Diaz</u>, or a certification of a blood alcohol test measuring alcohol above the legal limit, as in <u>Bullcoming</u>), then the certifiers must be available for confrontation at trial; and (3) if the non-participant's contribution is being offered for a non-hearsay purpose, then it does not pose a Confrontation Clause problem (<u>Williams</u>).

The closest Supreme Court case to the instant case, factually, is <u>Williams</u>.  There, a plurality of the Court rejected a Confrontation Clause challenge to the testimony of Lambatos, an expert forensic analyst.  Following a rape, the police sent a DNA sample from the rape kit to an outside laboratory, Cellmark.  When Cellmark developed a DNA profile from the sample and provided it back to the police, Lambatos ran it through a police database of prior arrestees, and, in her judgment based on her expertise, she concluded that the DNA profile matched Williams's. The analyst testified to these events at trial.

There were two bases for the plurality's opinion. First, the plurality held that because the laboratory report was not admitted into evidence, but merely testified to by Lambatos as the basis of her opinion, the report was not offered for the "truth of the matter asserted" and thus could not give rise to a Confrontation Clause violation. Second, the plurality held that because the defendant had not yet been identified as a suspect at the time the DNA testing was performed, even if the report had been admitted into evidence, it would not pose a Confrontation Clause problem because the report was prepared primarily for investigative rather than prosecutorial purposes. The Court was influenced by the fact that the Cellmark report was not inculpatory standing alone – the prosecutor had to independently prove that the Cellmark sample came from the rape kit and that Cellmark had developed an accurate DNA profile from it, and then Lambatos had to give an opinion that the profile that Cellmark developed matched that of Williams. In that sense, Lambatos was not vouching for the accuracy of the Cellmark profile. She was simply assuming it was accurate, and if so, expressing an opinion of how the DNA profile compared to those in the database.

Justice Thomas, concurring only in the judgment, disagreed with both bases for the plurality's decision, but provided a fifth vote on a different basis. Justice Thomas thought that there was no Confrontation Clause violation because the Cellmark laboratory report "lacked the requisite 'formality and solemnity' to be considered 'testimonial' for purposes of the Confrontation Clause." 132 S. Ct. at 2255 (Thomas, J. concurring) (quoting Michigan v. Bryant, 562 U.S. 344, 378 (2011) (Thomas, J., concurring)).

Despite its factual similarity, there are important distinctions between this case and Williams. First, the Williams Court emphasized that the Cellmark report was merely an assumption behind Lambatos's testimony, the accuracy of which the prosecution had to prove

independently.  In the instant case, the reviewers' work played no role in forming Simonetti's opinion.  She reached her own conclusions prior to and without regard to the subsequent review.

Second, the prosecutor in <u>Williams</u> introduced independent evidence to prove the chain of custody and, more importantly, the accuracy of the Cellmark profile.  Here, nothing was offered to support the reviewers' conclusions except that they were the same as Simonetti's.

Third, and perhaps most importantly, the <u>Williams</u> court emphasized that the purpose of Cellmark's work "was not to accuse petitioner or to create evidence for use at trial . . . . [rather,] its primary purpose was to catch a dangerous rapist who was still at large."  <u>Id.</u> at 2243.  A large part of this was that Cellmark did not know, and could not ascertain, the identity of the person revealed in its profile.  "[N]o one at Cellmark could have possibly known that the profile that it produced would turn out to inculpate petitioner – or for that matter, anyone else whose DNA profile was in a law enforcement database."  <u>Id.</u> at 2243-44.  Although the plurality opinion, perhaps peculiarly, did not use the term "non-testimonial" to describe the Cellmark report, that term accurately conveys the way that the plurality viewed it.

That was not the case here.  Once Simonetti picked out petitioner's fingerprints from the database and sent her analysis to the reviewers, his identity was known.  The purpose of submitting Simonetti's analysis for additional review was to confirm and thereby bolster it so it would fare better in court.  Indeed, when the District Attorney finally addressed the merits of the Confrontation Clause claim for the first time (on the appeal of the § 440 decision), he did not even argue that the reviewers' work was non-testimonial.

Instead, the District Attorney argued that the purpose of the testimony was not to put the reviewers' opinions in front of the jury.  Rather, according to the District Attorney, it was "to explain the steps or procedures that Simonetti was required to follow," and "to offer a complete

picture of the Latent Print Unit protocol that Simonetti followed."  That argument anticipated the Williams plurality's holding that if the out-of-court statement is offered for a reason other than its truth, then the Confrontation Clause is not implicated.

But why did the jury need to know the reviewers' process and, particularly, their conclusions?  I do not see how Simonetti's testimony about her unit's review process was relevant except to enhance the weight of her opinion by conveying that other experts shared it. She did not need to mention them at all for the jury to understand what she did and how she reached her conclusion:  there was no gap in the analytical process that led to her conclusion. The jury could have accepted or rejected the validity of Simonetti's analysis without ever knowing about the additional reviews.  But by having her testify that two others had done the same work she did, after she did it, and independently reached the same conclusion, the prosecution effectively obtained three expert opinions for the price of one.

It is a common tactic of proponents of hearsay to contend that testimony is not being offered for the truth of what it asserts, but just to complete the picture or to give background, which is in effect what the District Attorney argues here.  Sometimes that is a fair characterization, but often, the picture is already complete enough to explain the expert's opinion based on her testimony, and the hearsay contained within it, if taken as true, serves no purpose other than making that testimony more persuasive than it might be standing alone.

It thus would not have been sufficient for petitioner to cast doubt on Simonetti's conclusions through cross-examination; he would have had to cast doubt on the independent analyses by which the reviewers reached the same conclusion.  And because they were not in court, he could not.  This lack of opportunity to cross-examine the other reviewers violated petitioner's rights under the Confrontation Clause.

To conclude that petitioner could have had a valid objection to the reviewers' testimony, however, does not mean *a fortiori* that petitioner has met <u>Strickland</u>'s first prong – that trial counsel's failure to object was objectively unreasonable. A trial lawyer is not required to make every colorable objection. His action or omission must be judged without the benefit of hindsight. <u>See</u> <u>Strickland</u>, 466 U.S. at 689; <u>Mayo v. Henderson</u>, 13 F.3d 528, 533 (2d Cir. 1994).

That consideration is important here because petitioner's trial was in March 2010. That was five years after the sea change in Confrontation Clause jurisprudence effected by the Supreme Court in <u>Crawford</u>, but it was only a few months after the Supreme Court's decision in <u>Melendez-Diaz</u>, and well before the other <u>Crawford</u> progeny addressing the problem of expert testimony that included reliance on out-of-court forensic testing by someone other than the expert witness. Indeed, one of the reasons that the plurality in <u>Williams</u> offered for its conclusion was that "[f]or more than 200 years, the law of evidence has permitted the sort of testimony given by the expert in this case." 132 S. Ct. at 2228. <u>Strickland</u> does not require an objectively reasonable attorney to predict future, potential developments in the law. <u>See</u> <u>Smith v. Murray</u>, 477 U.S. 527, 536 (1986); <u>Jameson v. Coughlin</u>, 22 F.3d 427, 429-30 (2d Cir. 1994). In addition, as the Second Circuit has recently recognized, the application of <u>Crawford</u> to expert testimony that incorporates other, non-testifying forensic work remains too unsettled in some cases, even as of this writing, to permit habeas corpus relief under the deferential standard of AEDPA. <u>Griffin</u>, 876 F.3d at 407-10.

Nevertheless, although the question is close, I cannot view counsel's failure to object as objectively reasonable. First, as noted above, there was no tactical reason to refrain from objecting. It is not as if there was an abundance of forensic evidence and Simonetti's testimony about the reviewers was in some haystack. This case was all about two fingerprints, and if there

was anything defense counsel could do to diminish Simonetti's testimony, it should have been done.  Second, this case is a clear step beyond <u>Williams</u> – the reviewers' opinions were not necessary for Simonetti to reach her opinion and prosecutor used the reviewers' opinions to confirm Simonetti's view that the crime scene fingerprints belonged to petitioner.  They were rank hearsay and triggered precisely the Confrontation Clause problems identified in <u>Crawford</u>.  An objectively reasonable trial attorney should have recognized hearsay and its constitutional implications, even in 2010.

This is confirmed by the state of New York caselaw at the time.  In <u>People v. Rawlins</u>, 10 N.Y.3d 136, 157, 855 N.Y.S.2d 20, 34 (2008), the New York Court of Appeals had held that a latent fingerprint comparison report by a non-testifying expert violated the Confrontation Clause (although in that case the Court found the error was harmless).  As a New York trial lawyer, petitioner's counsel should have been familiar with the case by 2010.

The only argument that could be raised in defense of trial counsel's inaction was that unlike <u>Melendez-Diaz</u> and <u>Rawlins</u>, Simonetti's testimony about the reviewers did not have the formality of the certificates and reports which the Supreme Court and the New York Court of Appeals, respectively, found testimonial.  But the reviewers' conclusions served no purpose other than enhancing the probative value of Simonetti's testimony for purposes of presenting that testimony in court, and thus were just as testimonial as the out-of-court statements in <u>Melendez-Diaz</u> and <u>Rawlins</u>.

Having determined that counsel's failure to object was objectively unreasonable, the Court must consider <u>Strickland</u>'s second prong, prejudice, which here requires the Court to ask whether there a reasonable probability that without Simonetti's testimony about the reviewers, the jury would have acquitted.  <u>See</u> 466 U.S. at 687.  Like the question of objective

reasonableness, the question of prejudice is close because Simonetti's testimony provided the only evidence that petitioner had committed the crime. If the jury found Simonetti's testimony insufficient to establish petitioner's guilt, it would have had to acquit. The question thus becomes: to what degree did Simonetti's invocation of the reviewers enhance her testimony?

Despite the centrality of Simonetti's testimony the case, I conclude that when that portion of her testimony concerning the reviewers is put in context, petitioner cannot meet his burden of proving prejudice. Her testimony about the reviewers was brief, about ½ page out of 29 pages of direct testimony. The bulk of her testimony concerned the process that she personally undertook in reaching her conclusion that the prints belonged to petitioner, without reference to the reviewers. On cross-examination, trial counsel attacked the reliability of her process as well as certain assumptions in the art of fingerprint comparison itself but did not mention the reviewers. And in closing arguments, neither the prosecutor nor the defense mentioned the reviewers discussing the impact of her testimony.

I therefore conclude that petitioner was not materially prejudiced by Simonetti's testimony about the reviewers. Because he has not met the requirements of <u>Strickland</u>, he has no means to avoid the state law procedural bar.

### III. Sufficiency of the Evidence

In his amended petition, petitioner raises additional grounds that, read liberally, distill into a claim that the evidence was insufficient to convict him. He contends: (1) the evidence suggested that the burglar was the roommate of the brother of one of the victims, because the brother had a key to the apartment; (2) there was no forced entry into the apartment; (3) the burglar apparently knew where the money was, which again points to a suspect who had a relationship with the victims.

Plaintiff did not challenge the sufficiency of the evidence on direct appeal.  That is the only time that New York law permitted the issue to be raised.  See N.Y. Crim. Proc. Law § 440.10(2)(c).  Under these circumstances, the claim is deemed exhausted and procedurally barred.  See McKethan v. Mantello, 292 F.3d 119, 122 (2d Cir. 2002).  There is no cause to excuse the procedural bar for the sufficiency of the evidence claim based on ineffective assistance of counsel because petitioner never raised that particular claim on direct appeal. Carpenter, 529 U.S. at 451-52.  Nor is there any basis for finding manifest injustice.

Accordingly, I reject the legal insufficiency claim as procedurally barred.

## CONCLUSION

The petition is denied and the case is dismissed.  Because "reasonable jurists could debate" whether petitioner's Confrontation Clause/ineffective assistance of counsel claim "should have been resolved in a different manner," Slack v. McDaniel, 529 U.S. 473, 484 (2000), the Court grants a certificate of appealability as to the following issues only:  (1) what is the standard of review for petitioner's claim that the procedural default of his Confrontation Clause claim should be excused by the ineffective assistance of his counsel; and (2) if the standard of review is de novo, was petitioner's counsel constitutionally ineffective for failing to preserve the Confrontation Clause claim?  See 28 U.S.C. § 2253(c).  The Courts also grants leave to petitioner to proceed in forma pauperis on appeal on the same claims.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
      July 20, 2018